United States District Court
Southern District of Texas
FILED

**JUN 2 3 2000**

Michael N. Milby
Clerk of Court

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

| | |
|---|---|
| HORACIO GARCIA-CASTRO, §<br>§<br>DEFENDANT/PETITIONER,§<br>§<br>VS. §<br>§<br>UNITED STATES OF AMERICA, §<br>§<br>RESPONDENT. §<br>_____§ // | CASE NO. **B-00-097**<br><br>USDC. NO. B-97-490-S1-1 |

## MENORANDUM OF
## MOTION UNDER 28 U.S.C. § 2255
## TO VACATE, SET-ASIDE, OR CORRECT
## SENTENCE BY A PERSON IN FEDERAL CUSTODY

TO THE HONORABLE JUDGE OF SAID COURT:

**COMES NOW,** Horacio Garcia Castro, hereinafter Defendant, Petitioner or Garcia.  Petitioner comes Prose, and respectfully submits this Motion under 28 U.S.C. § 2255 to vacate, set-aside, or correct Sentence by a person in federal custody On this **2ND** day of __**JUNE**_____, 2000.

The Petitioner request that this Honorable Court liberally construe his pro-se allegations, and not subject them to the Standards that would be applied to the pleadings drafted by a Lawyer.  See for Example, the Case of Haines v. Kerner, 404 U.S. 519, 520 - 21, 92 S. Ct. 594, 596, 30 L. Ed. 2d 652 (1972) (per curium).

Page 1

## JURISDICTION

The Jurisdictional basis for this Motion is Title 28 of the United States Code Section 2255.  Title 28 U.S.C. Section 2255 is used to test the legality of a prisoner's detention if the remedy by motion is adequate and effective.  A 2255 motion is merely another step in the Defendant's Criminal case and is favored over the traditional habeas corpus actions under 28 U.S.C. Section 2241 for cases challenging the validity of a conviction or sentencing.

In pertinent Part, Title 28 U.S.C. Section 2255 states:

> "A prisoner in custody under sentence of a Court ... claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution, or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack may move the court which imposed the sentence to vacate, set-aside, or correct the sentence."  (Emphasis added).

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.   Whether Petitioner was denied his Sixth Amendment Constitutional right to effective assistance of counsel in regard to representation for failure to investigate a plausible theory of defense and preparation for trial.

2.   Whether Counsel's failure to investigate the United States sentencing Guidelines rised up to Ineffective Assistance of Counsel.

CrimPDX—source.lexis.com

3.    Whether Counsel's failure to challenge the erroneous attributed quantity of drugs seized where the preponderance of the evidence did not support the § 1B1.3 finding.

4.    Whether Counsel's failure of misapplication in relation to this conviction rised to Ineffective Assistance of Counsel.

5.    Whether the District Court erred in the application of the Sentencing Guidelines.

6.    Whether the District Court erred in basing Garcia's sentence on the Pre-sentence Report and not on what the Jury found Defendant guilty of.

7.    Whether Counsel's failure to investigate the case when he only spoke to Defendant 3 times prior to trial.

8.    Whether Counsel's failure to pursue entrapment defense and get applicable jury intructions.

9.    Whether Defendant Counsel's conduct was constitutionally deficient in giving no advice about desirability of a plea offer, when trial risked Ten to Life.

### STATEMENT OF THE CASE

**A.    Course of Proceedings and disposition below.**

        A Federal Grand Jury in Brownsvill, Texas filed a Four Count Indictment in Criminal Docket No. 97-490-01 on December 22, 1997 against Defendant Horacio Garcia Castro and other Co-Defendants.

        On February 4, 1998, a superseding indictment was filed addition three Counts to the original indictment.

Defendant Garcia plead not guilty and the case proceeded to trial before a jury beginning on March 6, 1998.  A jury was sworn in and began receiving testimony on March 16, 1998.  On March 17, 1998, the district court granted a motion for judgment of acquittal on count eight but denied judgments of acquittal on counts one through seven.  On March 18, 1998, the jury reached a verdict on counts one through seven Defendant Garcia, was found guilty.  A presentence investigation report was ordered and the case was set for sentencing.  On June 11, 1988 Garcia, was sentence serve concurrent 120 month terms of imprisonment on <u>Counts One</u>  for conspiracy to possess a controlled substance with intent to distribute 21 U.S.C. § 846, <u>Count Two</u> and <u>Three</u> possession of a controlled substance with intent to ditribute 21 U.S.C. § 841(a)(1); concurrent with 87 month terms of imprisonment on counts five, six and seven.  All sentences were ordered to run concurrently.

Defendant Garcia gave timely notice of appeal and the Fifth Circuit Court of Appeals Affirmed Defendant-Appellant's sentence on July 29, 1999.

## LEGAL ARGUMENT

> WHETHER DEFENDANT WAS DENIED HIS SIXTH
> AMENDMENT CONSTITUTIONAL RIGHT TO EFFECTIVE
> ASSISTANCE OF COUNSEL IN REGARD TO REPRESENTATION
> FOR FAILURE TO INVESTIGATE A PLAUSIBLE THEORY
> OF DEFENSE AND PREPARATION FOR TRIAL.

Page 4

## Standard of Review

A District Court may not deny a Section 2255 Motion with
out a hearing "unless the motion and the files and records of
the case, conclusively show that a prisoner is entitled to no
Relief". 28 U.S.C.A. Section 2255.

> "Whether a defendant received ineffective
> assistance of counsel is a legal question
> reviewed de novo." See:
> United States v. Swanson, 943 F. 2d 1070,
> 1072 (9th Cir. 1991) (Citations Omitted).

The right to Counsel embodied in the Sixth Amendment is the
Right to effective assistance of counsel. SEE:
McMann v. Richarden, 397 U.S. 759, 771, n. 14, 90 S. Ct. 1441,
1449, n. 14, 25 L. Ed. 2d 763 (1970). A claim of ineffective
assistance of counsel is judged under the two-pronged standard
set out by the Supreme Court in Strickland v. Washington, 466
U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1974), "The first
prong of this standard asks whether counsel's performance was
'deficient' under an objective standard of resonableness; the
second prong asks whether any deficiencies 'prejudiced' a
defendant." SEE: Spriggs v. Collins, 993 F. 2d 85, 87 (5th Cir.
1993). Establishing "prejudice" under Strickland requires a
showing that "there is a reasonable probability, but for counsel's
unprofessional errors, the result of the proceeding would have
been different." SEE: United States v. Birtle, 792 F. 2d 846,
849 (9th Cir. 1986), citing Strickland v. Washington, 466, U.S.
at 694.

Page 5

Further, ineffective assistance of counsel claims generally are cognizable in a § 2255 setting because they are of constitutional demension, see: Kimmelmam v. Morrison, 477 U.S. 365, 371-79 and n. 3, 106 S. Ct. 2574, 2580 - 84 and n. 3 (1986); see: Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984) and United States v. Pierce, 959 F. 2d 1297, 1301 (5th Cir.) cert. denied, 113 S. Ct. 621 (1992).

Challenges by way of habeas corpus proceedings are, therefore, preferable when the claims on direct appeal lack "the development of facts the record, which permit the defendant to show "what counsel did, why it was done, and what, if any, prejudice resulted." See: United States v. Rewald, 889 F. 2d, 859 (9th Cir. 1989) citing United States v. Pope, 841 F. 2d. 954, 958 (9th. Cir. 1986).

In United States v. Cronic, 466 U.S. 648, 80 L. Ed. 2d. 657, 104 S. Ct. 2039 (1984) the question was whether trial counsel's failure to subject the prosecution's case to a meaningful adversary testing process may constitute a denial of due process and establish a perse violation of defendant's right to effective assistance of Counsel.

In interpreting the prejudice prong, the Supreme Court created a narrow category of case in which prejudice is presumed when there has been an "actual or constructive denial of the assistance of counsel altogether". Strickland Supra at 692.

The Advarsarial process protected by the Sixth Amendment requires that the accused have "counsel acting in the role of

Page 6

an advocate." See: <u>Anders v. California</u>, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967). The right to the effective assistance of cousel is thus the right to the accused to require the prosecutors case to survive the crucible of meaningful adversarial testing. When a true adversarial criminal trial has been conducted even - if defense counsel may have made demonstrable error - the kind of testing envisioned by the Sixth Amendment has occurred. But if the process loses its character as a confrontation between adversaries, the Constitutional guarantee is violated. <u>United States v. Cronic</u>, 466 U.S. 648, 656-661 (1984) (Footnotes omitted)."

Defense counsel's errors in the present case rise to the level of ineffectiveness discussed in <u>Strickland</u> and <u>Cronic</u>.

The Defendant raises the issue of ineffective assistance of counsel because the record is sufficiently complete to enable the District Court to decide the issues. A Claim of Ineffective Assistance of Counsel is properly raised in the District Court on a Motion to Vacate, Set-Aside, or Correct Sentence.

U.S.C.A. Const. Amend. 6, 28 U.S.C.A. Section 2255; SEE: <u>United States v. Cox</u>, 83 F. 3d 336, at 340 (10th Cir. 1996).

In representing a criminal defendant, counsel owes the client a duty of loyalty, a duty to avoid conflict on interests, a duty to advocate the defendant's cause, a duty to consult with the defendant on important decisions, a duty to keep defendant informed of important developments in the course of the prosecution,

and a duty to bring to bear such skill and knowledge as will render the trial a reliable adversary testing process. Strickland, 406 U.S. at 677, 104 S. Ct..

In showing Ineffective Assistance of Counsel defendant states the following:

In United States v. Hill, 827 F. Supp. 738, at 740 (S.D. Fla. 1992), the court stated, "In order to prevail on a claim for ineffective assistance of counsel a defendant must meet the two-prong test established by the Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). The Court in Strickland held that a defendant has established ineffective assistance when he shows: 1) "that counsel's performance was deficient", i.e., that counsel made errors so serious that he or she failed to provide the "counsel" guaranteed by the Sixth Amendment; And 2) "that the deficient performance prejudiced the defense." i.e., that counsel's errors were so serious that the defendant was deprived of a fair trial with a reliable out come. Strickland, 466 U.S. at 687, 104 S. Ct. at 2064. Unless a defendant makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversarial process which renders the result unreliable. Id. "See also, Johnson v. Estelle, 704 F. 2d 232 (5th Cir. 1983); Mackenna v. Ellis, 280 F. 2d 592; 599 (5th Cir. 1960), Modified, 289 F. 2d 928 (5th Cir. 1961), cert. denied, 368 U.S. 877, 82 S. Ct. 121, 7 L. Ed. 78 (1961).

Page 8

## DEFICIENT PERFORMANCE OF COUNSEL

First, defense counsel never advised defendant Garcia to consider a possible plea agreement in or to avoid trying a case when the government had Guadalupe Ortiz-Aurelio who almost immediately began cooperating with law enforcement. In fact Guadalupe Ortiz was a Police Officer at the time of his arrest with the 503 grams of cocaine.

Second, in this case counsel for defendant Garcia, failed to investigate and only met briefly with Garcia three time prior to trial, also, counsel failed to listen to or review the government's potentially damaging audio tape which never included Garcia's voice, and without making the government authenticate said tape, opted to stipulate without objection to the government's transcribed version of the tape without reviewing same.

On Page 41 of the Trial Transcripts starting on line 22, The government tells the Court that they have made transcripts of a Tape recording.

"Mr Young:  With the Court's permission, we would
            like to play that.  We also have
            transcripts by the interpreter to hand
            to the jury to assist them."

"The Court:  Any Objection to the use of the
            Transcripts?"

"Mr. Valle:  None, Your Honor."

Page 9

Here Trial Counsel failure to objection to the use of
these transcripts, which were Jencks and Brady violation
Material at this point raised to ineffectiveness of counsel.
See: <u>United States v. Hinton</u>, 631 F. 2d 769 (D.C. Cir. 1980).
The transcripts eventhough the court gave instruction, that the
tape-recording was the evidence in the case.  That the transcripts
were given to them to assist them to follow what contained in
the tape.  The Court and the government later are reading off
this transcripts and not using the tape-recording at page 44 of
Trial Transcripts line 16, The Governments witness Guadalupe
Ortiz is asked by the Court the following when talking about the
taped conversation.

<blockquote>
"THE COURT:  And it also seems to indicate
            that at the conclusion, they say,
            "Wait for me there".

"THE WITNESS:  NO, Mr. Garcia said, "Wait,
            Wait," because he's going to be
            receiving a phone call."
</blockquote>

Surely all this is not on the Tape recording here the Witness
is reading off of the made up transcript or testify to some thing
that was not on the tape recording.

On Page 48 of the trial transcript the government's Attorney
is reading off of the recording made up transcript it self and
states as followed:

<blockquote>
"Q  -  Let me read one thing that he's saying here.
       "Just give me" -- and this is on Page 6 --
       Just give me -- it's that I'm waiting for
</blockquote>

Page 10

a man here now.  He said he's coming

right now, and I don't want to move

because he's bringing me an estimate."

what do you take that to mean?"

"A.  -  Probably some money.  I have no idea

really.

"MR. VALLE:  Objection.  Speculation.

"THE COURT:  You-re going to get him on cross-

examination."

Here the Objection should have been that the government

Attorney was reading off of the recording made up transcripts on

Page 6, and this was not on any tape recording these transcripts

were not evidence that the government's attorney could read to

the Jury.  but at the same time the Jury was reading off Page 6

too as they all had copies of this made up recording transcripts

and the court should have never allowed this error.

In the case of Henderson v. Franks, 155 F. 3d 159 (3rd Cir.

1998), The Thrid Circuit stated that "Henderson was deprived of

his right to counsel at a pretrial suppression hearing and trial

where error was a structural in the trial mechanism which defied

analysis by harmless error standards."

In this case Counsel should have objected or move for a

mistrial.  See: Starr v. Lockhart, 23 F. 3d 1280 (8th Cir. 1994).,

here the "Trial Counsel's failure to object to either "pecuniary

gain" or "heinous atrocious or cruel" aggravating circumstance Jury

Page 11

instructions during penalty Phase, amounted to ineffective
assistance of counsel."

At page 58 of the trial transcript starting at line 2 the
government attorney questions the witness by reading of the made
up recording transcripts as followed:

"Q - He mentioned it. Again, reading from the
transcript here, "Its cut up in small portions,
and they change it over there." Then he
says, "Fuck him." Do you mean that to mean
he's talking about his mom?

"A. - I don't know."

As the Court can see the government's attorney is using the
made up transcripts of the tape recording and not what was said
on the tape. Again on page 98 of the trial transcript starting
on line 2 here counsel Valle is asking the witness if the witness
can read it off of the government's made up transcripts of the
tape recording and it states the following:

"Q - On Page 3. Can you read that?
could you read it out loud?

"A. - (Spanish Spoken).

"Q - In English.

"A. "Yeah, listen to you" -- "Yeah, listen, do
you know if the other -- others arrived
over there?"

"Q - What are you talking about there?

"A.  -  I have no idea what's in there.  I've
            got to read the whole thing.  Maybe you
            can play the recorder and I'll let you know
            what's going on.

"Q  -  Didn't you review this statement with
            the prosecutor before coming here to testify?"

"A.  -  YES."

"Q  -  And don't you remember (spanish spoken)?"

"THE INTERPRETER:  "Other or Others?"

By Mr. Valle:

"Q  -  You don't?

"A.  -  NO."

"Q  -  You only remember what you want to
            remember?"

Mr. Young:  Argumentive, Judge.

"A.  -  I need to listen to the recorder or
            read the whole paragraph to see where
            I'm at.

Mr. Valle:  May I approach, Sir?

THE COURT:  Surely.

Again on page 116 of the Trial transcript Mr. Young, the
government's attorney states the following starting on line 5
of the trial transcript:

"MR. YOUNG:  May I approach, Judge?"

THE COURT:  You may.

Page 13

BY MR. YOUNG:

"Q   -   Mr. Ortiz, I'm going to hand you the
        transcript again that Mr. Valle has
        been talking to you about, and the reference
        made to (spanish spoken).  Now, this if on
        Page 3, for the interpreter.  What's the
        next line in English ? What's the next line
        after this talk about."

                (SPANISH SPOKEN)"

"A.   -   OH, the Same?"

"Q   -   And who is saying that?"

"A.   -   Mr. Garcia."

As stated above the District Court allowed the government's
attorney, The Government witness defense counselor Mr. Valle and
all the Jury to read from this transcripts with constituted
ineffective assistance of counsel see the case Hollines v. Estelle,
569 F. Supp. 146 (W.D. Tex. 1983).

In this Case Trial counsel's failure to file for discovery,
motion to produce exculpatory evidence under Brady v. Maryland,
373 U.S. 83. 10 L. Ed. 2d 215, 83 S. Ct. 1194 (1963), As in
Garcia's case had the government gave all the Discorvery to
Garcia's  defense counselor and not handed it to everybody at the
time the trial had started maybe defense counselor would have pre-
pare for trial. See: Turner v. Duncan, 158 F. 3d 449 (9th Cir.
1998), Harris By and Through Ramseyer v. Wood, 64 F. 3d 1432 (9th

Page 14

Cir. 1995), in this case trial counsel's failure to investigate and prepare for trial amounted to ineffective assistance.

In the Case of Pilchak v. Camper, 741 F. Supp. 782 (W.D. Mo. 1990), Trial Counsel's failure to conduct any pretrial discovery constituted ineffective assistance of counsel.

In defendant Garcia's Case defense counsel's failure to move for mistrial because of the Jencks material and Brady violation evidence being use and read by memembers of the Jury and the officers of the Court out loud should have constituted ineffective assistance of counsel.

In this Case we have a transcripts that are being used as evidence when the instructions given by the Court was that the transcripts were not the evidence that it was the Tape recording not the transcript's but in most parts the transcripts are the ones use and not the tape recording. Such as in Page 452 of the Trial transcript beginning on line 6 where it states as followed:

BY MR. VALLE:

"Q - SIR, there was a conversation between you and Guadalupe Ortiz when you were at Valley Regional Hospital that was recorded. Did you know that?"

"A. - I didn't know."

"Q - Would you like to review that conversation?"

"A. - What we talked about?"

"Q - YES."

Page 15

"A.   -  I arrived there at Valley Regional
         Hospital, and he was inside."

"Q  -  NO, SIR.  My question is, do you want
       to review that conversation that
       Guadalupe Ortiz recorded with you
       at Valley Regional?  I've got it in my
       hand.  Do you want to review it?"

"A.   -  YES."

"MR. VALLE:  May I approach the witness?"

"MR. YOUNG:  Judge, I'm going to object.  I would
            ask counsel to ask him if he can recall
            from memory and then try to refresh his
            memory.  I don't want to put any words
            in his mouth."

"THE COURT:  Let him go ahead. Time will best be."

In Page 478 of Volume 3 of 3 the Court is telling the
to Assume that what is in the transcripts made up of the record-
ing is whats on the tape.  At this Point the witness is saying
he can't understand the recording that all he can hear is "blah,
blah and Okay and the court asks him to Assume its on the
recording of the Tape.

This is at line 13 of the made up recording of the tape at
Page 78 and it states as followed:

"THE COURT:  And Assume what's in the transcript
             is what is stated in the tape.
             Assume that."

Page 16

At this point this transcripts shouldn't even be used as evidence the court should not tell the witness to Assume that what's on the transcripts is whats on the tape because the tape is the evidence not the transcripts.

Now, ON Page 486 of Volume 3 of 3 the court tells Mr. Young: the U.S. Attorney the following:

"THE COURT:  Retrieve the transcripts, YES,

SIR, you may approach."

Surely here again the Court is allowing the U.S. Attorney to show the witness the transcripts so that the witness can read it to as they call it refresh his memory and at the same time if the witness is asked to go to a certain Page on the made up transcript the jury has a copy and can all read off the same made up transcripts.

Defendant feel that his case should be vacated because of the government's failure to not release this Brady Material before trial the transcript's being use here should be Brady Materiat,. The Court is allowing everybody at trial to read off of this made up transcripts and surely up to the end of the trial the U.S. Attorney has not enter this transcripts as an exhibits which would made it evidence, that could have been use at trial.

In the case of Parkus v. Delo, 33 F. 3d 933 (8th Cir. 1994), The State falsely informed defendant's lawyer that defendant's material health records had been destroyed, and, as such constitute "Cause" for procedural default.  And evidentiary hearing

Page 17

was required to resolve this claim.   In this case the govern-
ment never informed anybody that they were going to be using
a made up transcript's through out the trial and not what
was on the tape recording.   Look at the instructions given by
the court at the beginning when the government stated that they
had the transcripts for everybody at trial.   The Court instruc-
tioned that it was the tape and not the transcript but through
out the trial the instructions were forgotton and the court
allowed them to use the transcripts in stade.   In the Case of
Tate v. Wood, 963 F. 2d 20 (2nd Cir. 1992),   Tate was entitled
to disclose evidence that the victim was initial aggressor.   The
test of materiality in the context of a guilty plea is whether
there is a reasonable probability that, but for the failure to
produce entered the plea but instead would have insisted on
going to trial.   The inquiry is an objective one that is resolved
largely on the basis of the persuasiveness of the with held
evidence.   See, Miller v. Angliker, 848 F. 2d 1312, 1322 (2nd
Cir.), cert. denied, 488 U.S. 890, 109 S. Ct. 224, 102 L. Ed.
2d. 214 (1988).

Defendant submits that his sentence in the instant case
should be vacated due to the Court's failure in not providing
the safeguards constitutionally required to protect the subs-
tantial rights of the Defendant and his counsel to provide him
with effective assistance.

Page 18

Defendant further alleges that such failings are not merely procedural, but substantially infringed upon Defendant's constitutional rights to due process of law.

Next, Defendant alleges that trial counselor constituted ineffective assistance of counsel, when Counsel advise Defendant to reject a 47 months plea offer. Counsel came to defendant the first time and erroneously advise defendant to reject a 47 months plea in fact what counsel told defendant was that the government had offered a 47 months plea and counsel had denied and told the government that they were going to trial. In the Case of Turner v. State of Tenn., 664 F. Supp. 1113 (M.D. Tenn. 1987), Trial Counsel erroneouly advice defendant to reject a two (2) year plea offer for kidnapping constitutes ineffective assistance.

In That Case defendant received a 40 year sentence for two counts. In this Case defense counsel erroneous advice defendant that the government had nothing on evidence against defendant that could convict defendant. Later on defense Counsel comes and tells defendant that the government had offered defendant a 7 year plea, but that Counsel had told the government that there way no way that he was going to take 7 year that he had turn down 47 months before and he was turndown the 7 years too, that was now bing offered. Defendant at this time told Counsel he want to plea but Counsel again erroneous advice defendant that the government had no evidence that could convict defendant in a Jury Trial.

Page 19

The defendant submits that he believes that he has suffered
substantial prejudice within the meaing of the 6th Amendment as
a result of defense counsel's unreasonable ommissions, when
defendant relied upon attorney's professional assistance and
thus gets convicted and loses the offer made by the government
without having the right to make up his mine about the govern-
ments plea offer.  In the Case of U.S. v. Mohammal, 999 F. Supp.
1198 (N.D. Ill. 1998), Trial Counsel's failure to explore
possibilities of a plea agreement which would have probably
resulted in at least a two (2) level adjustment in defendant's
base offense level for acceptance of responsibility and possible
a different adjustment relating to the defendant's role in the
offense constituted ineffective assistance of counsel.

In Edens v. Hannigan, 87 F. 3d 1109 (10th Cir. 1996),
Counsel's failure to pursue favorable plea negotiations on
defendant's behalf, which was motivated by a conflict of interest,
established ineffective assistance of counsel.

In defendant's Case the motivated conflict of interest was
that counsel could earn more money by taking the Case to Trial
then to have defendant plea out and not have to go through the
extra cost to go to trial.  Again showing the suffering substant-
ial prejudice within the meaning of the 6th Amendment as a result
of defense counsel.

The Next issue is that of the United States Sentencing
Guidelines.

Page 20

According to the Presentence Investigation Report the Base Offense Level in this Case was a level 26.

According to the P.S.I. at Page 8 at 39 it states the following:

> "Base offense level:  The United States Sentencing Commission Guidelines for a violation of 21 U.S.C. § 846, 841(a)(1) and 841(b)(1)(B) and 18 U.S.C. § 2 is found in U.S.S.G. § 2D1.1 (a)(3).
> Courtroom testimony revealed the net weight of the cocaine seized was 499.34 grams, 503.48 grams and 2 grams of cocaine.
> Therefore, pursuant to the relevant conduct provisions, the total amount of cocaine seized and applicable is 1004.82 grams of cocaine.
> U.S.S.G. § 2D1.1 states that a least 500 grams, but less than 2 Kilograms, of cocaine, establishes an offense level of twenty-six (26)."

Defendant's argument to this issue is that the Sentencing Commission amended the Federal Sentencing Guidelines Manual and Clarified the methode's of determining drug weight as "Actual Drug" weight which is determine by the Potency of the Drug.

The Sentencing Commission has amended and clarified the non-consumable product is not drug and is not to be included as part of the drug weight for determining a sentence.  Examples are waste water, even though it may contain trace amounts of illegal drug, and bees wax mixed with cocaine and sugar mixed with a drop of L.S.D..  These should also hold to any cut added to any drug.

The Sentencing Commission further clarified and amended that the drug weight must be based on one hundred (100) percent purity, the sentencing purposes; an example to this is if we

Page 21

have ten kilos of cocaine that is cut mixed with baking soda a lab report determines that the cocaine is sixty (60) percent pure, the court must then determine the amount of actual drug, would be Six (6) kilos of the actual drug, since forty (40) percent are four (4) kilos is actually a NON-Consumable product (baking soda). Therefore the court has actually determined the actual amount of drug weight by one hundred (100) percent purity.

As previously discussed in an example, the Court cannot in the interest of Justice, convict a person with a trillion gallons of L.S.D., merely because a defendant threw a drop of L.S.D. in the Ocean and the L.S.D. was mixed with the entire Ocean. With this understanding, Defendant now argues the Purity of the Cocaine that he was charged, convicted and sentenced.

At Page 322 of the Trial transcript beginning at Line 13 the Government's witness Mr. Raymond Day Waller Jr. of the Department of Public Safety Crime Laboratory In McAllen, Texas testified to the following:

> "A — The quantitative amount of the Cocaine
>       was 30 percent."

The government's witness here testifies that the Actual weight of the Cocaine was 503.48 grams. but that only 30 percent of that weight was actual cocaine. The Sentencing Commission clarified that it was drug and not the non-consumable product used in determining a sentence, and 30 percent of 503.48 grams would be 151 grams that should be use as actual drug weight.

Page 22

On Page 326 of the Trial Transcript Mr. Raymond Day Waller
Jr. of the D.P.S. Crime Laboratory again testified of 499.34
grams of Cocaine also seized from Arturo Pena Lozano who was
defendant's Co-defendant. But the cocaine seized here is 26
percent. The witness for the government Mr. Raymon Day Waller
Jr. states as followed:

> "Q  -  Beside your report on the 499.34 grams
> of cocaine, you have 26 percent. What
> does that mean?"

> "A.  -  "26 percent, that means that the actual
> cocaine present was quantitated at 26
> percent."

> "Q  -  What is 26 percent of 499.34 grams of
> Cocaine?"

And on Page 327 to 333 of the Trial Transcript the Witness
Mr. Raymond Day Waller Jr. of D.P.S. Crime Laboratory talked
about 129 grams if its 26 percent and amounts.

As we can see the P.S.I. used as relevant conduct a total
amount of cocaine seized of 1004.82 grams of cocaine to establish
an offense level of twenty-six (26) but the actual weight for
sentencing should have been 280 grams of cocaine used for
sentencing according to the Sentencing Commission. The 503.48
at 30 percent would add up to 151 grams of One Hundred (100)
percent and the 499.34 grams that was at 26 percent should have
been 129 grams a total amount of cocaine of 280 grams actual
weight.

Page 23

According to the Sentencing Guidelines Manual Defendant guidelines should have been a level 20 at least 200 grams but less than 300 grams of cocaine (or the equivalent amount of other schedule 1 or 11 stimulants).

The error here is regusing and failure to determine the purity of the cocaine.  The Prosecution Lab report as to the purity of the cocaine determined that on the 503.48 grams was 30 percent and that on the 499.34 grams it was 26 percent now we know that both amounts seized were different one was 30 percent and one was 26 percent purity.  And according to trial testimony of Arturo Pena Lozano at Page 435 of trial transcript the Witness here testifies that he was the person that gave the Cocaine to Officer Lupe Ortiz and not Defendant Horacio Garcia.

The Witness also testified at this time on Page 440 and 441 of the trial transcript that he gave the half of kilo of cocaine to Officer Lupe Ortiz and that the Cocaine did not come from Defendant Garcia but that it was his friend or acquaintance from Matamoros Named Hector Sanchez Aguilar, that gave him the Cocaine to sell Officer Guadalupe Ortiz.  Witness Arturo Pena here testifies that Defendant Horacio Garcia-Castro was not the supplier that it was his friend from Matamoros who the supplier was.

The purity of the cocaine must be determined in defendant's favor, considering it is the prosecution's responsibility to prove the amount of drug weight involved, even though it can be

determined within a reasonable variance.

Defendant is prejudiced by the refulal failure to determine the purity of the potency of the cocaine for sentencing purposes.

The Sentencing Commission is forming the Federal Guideline created and established 2D1.1 as a drug table for sentencing purposes and created a system that would conform all drugs equal weight, based on the 100 percent purity of the illicit drug. It stands to reason that the Sentencing Commission meant that all drug be based on 100 percent purity, just as all the other drugs are based, and the Sentencing Commission has further emphasized this notion by amending and clarifying the F.S.G.M. to exclude non-consumable product as drug weight, and by making all drug 100 percent purity for sentencing purposes, the reason being that it is beyond the power of the sentencing Commission to include a substance not a drug, as a drug for weight purposes to increase a sentence of a person.

The District Court must remand or vacate for a determination of the purity of the potency of the cocaine to determine the 100 percent ratio that can be used to determine the actual drug weight of cocaine to be used for the sentencing table as it has been said that the District Court cannot determine if an error in the misapplication of 2D1.1 exists, until there is a determination of the actual drug weight, in the form of it's 100 percent purity ratio.

In the Case of U.S. v. Marmolejos, 140 F. 3d 488 (3rd Cir.

Page 25

1998).   The Defendant was convicted of conspiracy to distribute cocaine and moved to vacate sentence based on Sentencing Guide-lines Amendment 518.   <u>Marmolejos</u> On Appeal argued that Amendment 518 to the Gudielines, which changed Application Note 12 effect-ive November 1, 1995, should Apply to his Offense and that he should be resentenced so that the amendment could be applied in sentencing him.   The District Court denied <u>Marmolejos</u> but the Court of Appeals remand for resentencing stating:

> "Because we hold that the amendment clarified
> the existing application note, rather than
> effecting a substantive change in the law,
> <u>Marmolejos</u> is entitled to relief and resentencing.
>   Accordingly, we will reverse the district court
> and remand for resentencing with consideration
> given to the amendment to the application note."

## EVIDENTIARY HEARING

Section 2255 requires a evidentiary hearing to determine the facts "unless the Motion and the files and records of the case conclusively show that the Prisoner is entitled to no relief." <u>Sanders v. United States</u>, 373 U.S. 1, 83 S. Ct. 1068, 10 L. Ed. 2d 148 (1963); <u>Machibroda v. United States</u>, 368 U.S. 487, 494, 82 S. Ct. 510, 7 L. Ed. 473 (1962); 2 Wright, Federal Practice and Procedure § 509 (1969).   Similarly in Habeas Corpus, See, <u>Chambers v. Maroney</u>, 399 U.S. 42, 90 S. Ct. 1975, 26 L. Ed. 2d 419 (1970).

Defendant respectfully request a evidentiary hearing based on the fact that his Motion meritorious, and the files and entitled to relief.

Page 26

## CONCLUSION

The basis theory behind due process is fairness. Defendant's sentence and conviction imposed in the instant case is consitutionally unfair for the aforementioned reasons.

Significantly, due to counsel's misrepresentation and lack of forceful advocacy that defendant has been punished to 120 months. It was counsel's unique legal legal skills, that are required to carefully advocate, and to insure that defendant's rights are not foregone and that defendant's substantial legal and factual arguements are not inadvertently passed over. Defendant feels that the misrepresentation by his Counsel left defendant unprotected at a vital stage of his legal proceeding, thus violating one of his most fundamental rights to be vigorously represented by Counsel.

WHEREFORE, Premises considered defendant Prays that for the aforementioned reasons, and in the interest of Justice, this Honorable United States District Court issue a Order <u>Granting</u> defendant's Motion to vacate, Set-Aside, or Correct Sentence, by a Person in Federal Custody, Pursuant to Title 28 U.S.C. § 2255, and for such other relief, special and general, at Law and in equity, to which he may be entitled, and will ever Pray.

**RESPECTFULLY SUBMITTED, IN GOOD FAITH ON THIS <u>JUNE 2ND,</u> 2000.**

PETITIONER.

/S/ *Horacio G. Garcia*

HORACIO GARCIA-CASTRO,    PRO-SE.
INMATE REG. # 77632-079
FCI BASTROP - B.O.P.
P.O. BOX 1010, CROCKETT UNIT
BASTROP, TEXAS  78602-1010

Page 27

## NOTICE OF FILING

"YOU WILL PLEASE TAKE NOTICE OF FILING, PETITIONER'S MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET-ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY."

**MOVANT.**

DATED: JUNE 2ND, 2000.

RESPECTFULLY SUBMITTED,

/S/ _Horacio C Garcia_

HORACIO GARCIA-CASTRO,   PRO-SE.
INMATE REG. NO. 77632-079
DEFENDANT/PETITIONER.

## CERTIFICATE OF SERVICE

I, Horacio Garcia-Castro, hereby Certify that the original and two correct copies of Petitioner's Motion to vacate, set-aside, or correct sentence under 28 U.S.C. § 2255 was sent to be file, by Mailing same instruments to United States District Court, Southern District of Texas, 974 E. Harrison St., Brownsville, Texas 78520.  According to 28 U.S.C. § 1746. **RESPECTFULLY PRESENTED, IN GOOD FAITH, ON THIS JUNE 2ND, 2000.**

/S/ _Horacio C Garcia_

HORACIO GARCIA-CASTRO, PRO-SE.
INMATE REG. NO. 77632-079
FEDERAL CORRECTIONAL INSTITUTION
P.O. BOX 1010, CROCKETT UNIT
BASTROP, TEXAS  78602-1010

Page 28